ROSSON *v.* CARROLL.

(*Jackson.* April 14, 1891.)

1. NEGOTIABLE INSTRUMENTS. *Indorsement of overdue note. Demand and notice requisite.*

Indorser of overdue negotiable paper is not liable upon his indorsement, unless demand for payment is made upon the maker by the indorsee within a reasonable time, and immediate notice of non-payment given to the indorser if the paper is dishonored. (*Post, pp. 96, 97.*)

Cases cited and approved: Bank *v.* Ezell, 10 Hum., 386; Duffy *v.* O'Conner, 7 Bax., 500; Kirkpatrick *v.* McCullough, 3 Hum., 171; Stothart & Co. *v.* Lewis, 1 Overton, 256; Stothart & Bell v. Parker, 1 Overton, 260; 6 Am. Dec., 267; 10 *Id.*, 663; 12 *Id.*, 609; 16 *Id.*, 672; 29 *Id.*, 584; 54 *Id.*, 212; 57 *Id.*, 622; 36 Am. R., 250; 18 Conn., 361; 8 S. & R., 353.

Cited and disapproved: 3 Wendell, 75; 1 Richardson's Law, 397; 2 *Id.*, 67; 12 Penn. St., 269.

2. SAME. *Same. Demand for payment, when made.*

Demand for payment of note indorsed after maturity must be made with same diligence that is required in demanding payment of indorsed note due on demand. Demand made, as was done in this case, within four days after the indorsement is sufficient to fix the indorser's liability if it had been followed by protest and due notice of non-payment. (*Post, p. 97.*)

3. SAME. *Same. Notice of non-payment, when given.*

Notice of non-payment must be given to the indorser with equal diligence, whether the note was indorsed before due or after maturity. The notice must in either case be immediate. Not longer than the next regular business day after the dishonor of the note, and certain hours during that day, is ordinarily allowed for giving or mailing notice of non-payment to the indorser. The notice proved in this case is not shown to have been given within the required time. (*Post, pp. 98–119.*)

Rosson *v.* Carroll.

4. SAME. *Same. Burden of proof.*

Burden of proving due notice of non-payment is upon holder of note. (*Post, p. 130.*)

Case cited: 1 Stark, 314.

5. SAME. *Same. Proof of due notice, how made.*

Proof of due notice of non-payment may be afforded by recital in Notary's certificate of protest, that being a fact which he is authorized by law to certify. (*Post, p. 120.*)

Code construed: §§ 2471, 2472 (M. & V.); §§ 1800, 1801 (T. & S.).

Cases cited and approved: Golladay *v.* Bank, 2 Head, 58; Sulzbacher *v.* Bank, 86 Tenn., 201; Gardner *v.* Bank, 1 Swan, 419; Caruthers *v.* Harbert, 5 Cold., 362; Colms *v.* Bank, 4 Bax., 422; Spence *v.* Crockett, 5 Bax., 576.

6. SAME. *Same. Same.*

Proof of due notice of non-payment may be made by the Notary, though he may have no independent recollection of the fact, if he can testify to that fact upon belief, and is corroborated by entries on his notarial book, or statements in his certificate of protest, and by his settled habits of business. (*Post, pp. 121–125.*)

Cases cited and approved: Bank *v.* Cowan, 7 Hum., 70; Bell *v.* Perkins, Peck, 262; McNeil *v.* Elam, Peck, 268; Worley *v.* Waldron, 3 Sneed, 549.

7. SAME. *Same. Same.*

But due notice of non-payment is not sufficiently proved by the testimony of the Notary as to his impressions and inferences about the fact, where he has no independent recollection of it, and had not acquired any habits of business, and is not corroborated by entries in his notarial book, nor by statements in his certificate, but rather contradicted by the latter. (*Post, pp. 121–125.*)

Case cited: 44 Am. Dec., 627.

8. SAME. *Same. Notice must be given upon first demand.*

Notice of non-payment comes too late, though given in due time after a demand for payment and protest, where there had been another demand several days before, upon which there was no protest had and no notice given. Notice must follow upon first demand, and was not in time. (*Post, pp. 130, 131.*)

Rosson *v.* Carroll.

9. SAME. *Same.* *Agent's negligence in giving notice imputable to principal.*

If due notice of non-payment is not given by reason of the negligence of an agent to whom the note was intrusted for collection, that negligence is imputable to the principal, and will nevertheless discharge the indorser. (*Post, pp. 131, 132.*)

10. SAME. *Same.* *Collecting agent treated as indorser in giving notice.*

An agent to whom a negotiable note is intrusted for collection, whether by indorsement or mere delivery, is treated, in the matter of giving notice of non-payment, as an indorsee of the note. He is entitled to the usual time to notify his principal of non-payment, and the principal to the usual time thereafter to notify antecedent indorsers. But if the agent has failed to give notice to his principal in due time, the latter is cut off, though he may thereafter use due diligence in communicating notice to antecedent parties. (*Post, pp. 125, 126.*)

Cases cited and approved: Butter *v.* Duval, 4 Yer., 265; McNeil *v.* Wyatt, 3 Hum., 126; Hill *v.* Bank, *Id.*, 670; Simpson *v.* Turney, 5, Hum., 419; 5 Mason, 366; 21 N. Y., 485; 8 B. & C., 387.

11. SAME. *Same.* *Discharged indorser may revive his liability.*

An indorser who is discharged from liability by reason of the failure to give him due notice of non-payment, may revive his liability to his indorsee by a promise to pay the note or acknowledgment of his liability therefor, made after and with full knowledge of his discharge. There is no proof of such promise or acknowledgment in this case. (*Post, pp. 133, 134.*)

Cases cited and approved: Bogart *v.* McClung, 11 Heis., 105; Spurlock *v.* Bank, 4 Hum., 336; Golladay *v.* Bank, 2 Head, 58; Martin *v.* Ewing, 2 Hum., 359; Williams *v.* Bank, 9 Heis., 441; Bank *v.* Rawlings, 1 Leg. R., 226; Gregory *v.* Allen, M. & Y., 76; Seay *v.* Ferguson, 1 Tenn. Ch., 293.

---

FROM GIBSON.

---

Appeal from Chancery Court of Gibson County. H. J. LIVINGSTON, Ch.

NEIL & DEASON and T. L. MOSELEY for Rosson.

COOPER & HARWOOD for Respondents.

CALDWELL, J. This is an action in the Chancery Court by an indorsee against the indorser of an overdue promissory note. His bill being dismissed by the Chancellor, complainant appealed. The substance of the pleadings is well stated in the assignment of errors and brief by complainant's counsel, as follows:

"On October 29, 1887, the complainant, M. Rosson, filed his bill in the Chancery Court at Trenton against the defendant, John R. Carroll; in which bill he charged:

"That on December 25, 1886, the Paragould Stave Manufacturing Company, of Paragould, Ark., executed to the firm of Ware, Bittick & Co. a promissory note for the sum of $2,087, with interest at 10 per cent. per annum, and payable one day after date;

"That said Ware, Bittick & Co., on April 1, 1887, indorsed and transferred said note to the complainant, and that he was the holder and owner of the same;

"That on April 12, 1887, the said note was duly presented for payment to the said Paragould Stave Manufacturing Company by John M. Davis, a Notary Public, and payment refused, and due protest thereof made by said Notary, and on the same day due notice was given to said Ware, Bittick & Co. and to all the parties;

"That the said Ware, Bittick & Co., at the time of said indorsement and said demand and notice and these transactions, was a partnership, composed of Ware, Frank Bittick, and John R. Carroll;

"That Bittick died insolvent in Arkansas, and the residence of Ware was unknown to complainant, and that he sued the defendant, John R. Carroll, alone;

"That said John R. Carroll had due notice of said protest and of said demand and failure to pay, both as a member of the firm of Ware, Bittick & Co. and otherwise, and that he is bound upon said indorsement personally and as a member of the firm of Ware, Bittick & Co., and that he is bound *in solido* to the complainant;

"That said defendant, John R. Carroll, likewise received reasonable notice of said demand and failure to pay outside of and in addition to said protest and notice thereof by said Notary;

"That the said note was overdue when indorsed to complainant, and the home of the Paragould Stave Manufacturing Company was in the town of Paragould, Ark., and complainant's home was in Obion County, Tenn., and demand was made and notice given within a reasonable and lawful time;

"That said note was an Arkansas contract, and bears ten per cent. by special stipulation upon its face, and that such was the lawful rate in Arkansas;

"That J. R. Carroll was a citizen of Gibson County, Tenn."

Rosson *v.* Carroll.

The prayer was for judgment, etc., in the usual form, and the oath to the answer was waived.

On February 24, 1888, the defendant filed his answer. In this answer he admits that complainant is the holder and owner of the note described in the bill, and also admits the indorsement, and also admits that the home of the maker was in Paragould, Ark., and also admits that the note bears ten per cent., as charged; but insists that the maker was a corporation, and submits the question to the Court whether the note would be usurious for that reason. He denies that on April 12, 1887, demand and notice and protest were made as charged in the bill; denies that either he or Ware, Bittick & Co. received any notice; denies that due demand was made and notice given; denies that he received legal notice in any manner; denies that "demand was made and notice given in a reasonable and lawful time," as charged; and avers "that the first that respondent ever heard of the fact that the maker thereof had failed to pay the said note was some months after it was indorsed to complainant," etc. He admits that the members of the firm of Ware, Bittick & Co. were correctly set forth in the bill, and states his own residence as at Kenton, Tenn.

The answer also pleads as an offset a note of fifty dollars which he held upon the complainant, which he asks to be set off against complainant's recovery, if complainant shall succeed in holding him, defendant, liable as indorser, etc.

The note was payable to Ware, Bittick & Co. or order, and when indorsed was three months and five days past due. The transfer was negotiated and made by the defendant for his firm in these words:

"For value received we transfer this note to M. Rosson. This first day of April, 1887.

"(Signed)                WARE, BITTICK & Co."

Before referring further to the facts of the case, the principal legal questions involved will be considered.

What duties, with respect to demand and notice, does the indorsee of an overdue note owe to his indorser? or what legal steps must he take to convert the conditional liability of the indorser into an absolute obligation to pay the debt?

The distinguishing feature of the liability of an indorser of any negotiable paper is that such liability is contingent upon due presentment for payment and notice of dishonor.

Though a note transferred after maturity "comes disgraced to the indorsee" (as said by Lord Ellenborough in *Tinson* v. *Francis*, 1 Camp., 19), and is in his hands subject to all equitable defenses attaching to it and existing between the maker and payee at maturity, it is nevertheless negotiable; and in order that the indorser may be held liable, demand must be made of the maker and notice of non-payment given.   Tiedeman on Com. Paper, Section 336; Chitty on Bills, 159, 160; Byles on

Bills, 168, 169; Randolph on Com. Paper, Sections 674, 675; 2 Am. and Eng. Ency. of Law, 399, 407, 408; Story on Prom. Notes, Section 178; Daniel on Nego. Insts., Section 996; *Leavitt* v. *Putnam*, 3 Comstock, 494 (S. C., 53 Am. Dec., 323); *Berry* v. *Robinson*, 9 Johnson, 121 (S. C., 6 Am. Dec., 267); *Kirkpatrick* v. *McCullough*, 3 Hum., 171; *Duffy* v. *O'Conner*, 7 Bax., 500; *Poole* v. *Tollison*, 1 McCord, 199 (10 Am. Dec., 663); *Ecfert* v. *Des Condres*, 1 Mill, 69 (12 Am. Dec., 609); *Nash* v. *Harrington*, 2 Aikens, 9 (16 Am. Dec., 672); *McKinney* v. *Crawford*, 8 Sarg. & R., 353.

Yet the same strictness as to time of demand and notice is not, in all particulars, required with respect to such a note as must be observed in case of one indorsed before due.

As between indorser and indorsee, a note transferred after maturity is deemed equivalent to a note payable on demand, and is subject to the same rule of diligence in the matter of presentment for payment and notice of dishonor. To bind the indorser in such a case, it is incumbent on the indorsee to see that due demand is made in a reasonable time, and that notice is promptly given if payment be refused. Randolph on Com. Paper, Sections 671, 672, 1046, 1098; Daniel on Nego. Insts., Sections 611, 996; 2 Am. & Eng. Ency. of Law, 396, 397; 1 Parsons on N. & B., 381, 382, 519, 520; Byles on Bills (7th Ed., by Sharswood), 211, 212, and note, 169, 170; *Colt* v.

7—6 p

*Barnard*, 18 Pickering, 260 (29 Am. Dec., 584); *Jones* v. *Robinson*, 11 Arkansas, 504 (54 Am. Dec., 212); *Graul* v. *Strutzel*, 53 Iowa, 712 (36 Am. R., 250); *Bank* v. *Ezell*, 10 Hum., 386; *Patterson* v. *Todd*, 18 Penn. State, 426 (57 Am. Dec., 622).

The point most contested in argument at the bar—one ably and learnedly debated on both sides—concerns the time in which notice of the dishonor of a note indorsed when overdue, shall be given to the indorser. It is urged for complainant that the indorsee of such an instrument should have reasonable time in which to make demand, and like time in which to give notice; for defendant it is conceded that reasonable time is permitted for demand, but, as to notice, it is contended that it must be given with the same promptness as is required in case of indorsement before maturity.

The authorities are somewhat in conflict; but we think the great weight of juridical opinion, as expressed in the text-books and in judicial decisions, is in favor of the rule we have just stated, and sustains the proposition that the same diligence must be used in giving notice of dishonor to the indorser of an overdue note as is required by the law-merchant in notifying one who indorses before maturity.

In our opinion, the rule as to notice of non-payment to indorsers of time-notes before due, and of demand-notes, is, and should be, the same; we have seen no difference stated as to that matter in any authority, and do not perceive how a sound

distinction could be taken, the reason for the notice being the same in each case.

Then, if it be true, as announced by numerous authorities already cited, that indorsed demand-notes, and time-notes indorsed *after* maturity, are governed by the same rule in regard to notice of non-payment, it follows that one and the same rule of notice is to be applied to all the three classes of notes mentioned — time - notes indorsed *before* due, notes payable on demand, and time-notes indorsed *after* maturity.

Why should not this be so? It simplifies the law-merchant and facilitates transactions in commercial paper; in respect to which simplicity and uniformity in the rules of law are all-important and conducive to the prosperity and welfare of every community, especially of commercial people.

Why should one who acquires an *overdue* note have or *need* more time to give *notice* of non-payment than the indorsee of a note acquired *before* maturity? He is justly allowed more indulgence in demanding payment of the maker, because the indorser knew at the time of the transfer that the maker was then in default; but when he has had all reasonable time for that purpose, the reason is not so satisfactory for extending the same indulgence with respect to notice. Certainly no more time for notification is *needed* by the one indorsee than by the other.

We quote the language of some of the writers on this subject:

"If a negotiable note is indorsed after maturity, it becomes in effect a demand-note, and payment must be demanded within a reasonable time, and notice of dishonor *at once* given to the indorser." Randolph on Com. Paper, Sec. 1098.

"When a negotiable instrument is indorsed after maturity, payment must be demanded of the payor within a reasonable time, and notice, in the event of a refusal, given to the indorser, in order to charge him, it being regarded as equivalent to one payable on demand." Daniel on Nego. Insts., Sec. 611.

It will be observed that the latter author does not in terms state *when* the notice shall be given; but he does say, in effect, that the same rule as to notice is applicable to a note indorsed after maturity as to one payable on demand. He makes substantially the same statement in Section 996 of the same learned and valuable treatise, and at the same time mentions the fact that some of the cases have been less strict on the subject of notice, thereby departing from the principle by him deemed "clearly correct." Those cases are among the number relied on by complainant's counsel, and will be referred to again.

Says Parsons: "We have already seen that, in order to charge an indorser of a note payable on demand, presentment must be made within a reasonable time. But if, after such presentment, the note is dishonored, there is no good reason why the same rules as to the time within which notice is

Rosson *v.* Carroll.

to be forwarded to the indorser should not apply, as in the case of other notes and bills. We have also seen that a note or bill in which no time of payment is specified is to be considered as payable on demand. We should say in this case also that notice should be given within the same time as in other cases. It has already been remarked that a note indorsed when overdue is by the best authorities considered equivalent to a note or bill on demand, though some cases hold that the same strict rules are not to be applied. It has been said that the holder has a reasonable time after presentment within which to notify the indorser, and that this reasonable time may be as long as two months; and an opinion has been expressed that no notice at all is necessary. To maintain these views would seem to be introducing unnecessary distinctions; and, in our opinion, the notice should be transmitted as soon in the case of such notes and bills as of any others. If the analogy between notes and bills on demand and those indorsed when overdue and notes and bills payable at sight is to be carried out, the same notice of dishonor would certainly be · requisite; for no distinction, that we are aware of, has ever been attempted to be drawn between the time necessary in forwarding notice to an indorser of a bill at sight and one in which there is a fixed time for payment." 1 Parsons on N. & B., 519, 520.

The two cases here disapproved by Parsons are

the same referred to by Daniel (in Section 996) as being contrary to the correct principle.

"The authorities," says Wade, "are not in perfect accord as to the right of an indorser of negotiable paper which, at the time of indorsement, was past due to notice. The doctrine is announced in *Gray* v. *Bell* and *Van Hoesen* v. *Van Alstyne* that indorsers of overdue paper are not entitled to notice of its dishonor beyond such as would arise from the bringing of a suit within a reasonable time, which might extend to several months. In the latter case three months was regarded as a reasonable time. But, notwithstanding the views expressed in these two cases, the current of authority seems to be decidedly against the exception therein contended for. Indorsers after maturity, as well as indorsers of paper due at sight or on demand, sustain the same relations to each other and to other parties in regard to the matter of notice as indorsers of time-paper before maturity, with the single exception that they have a right to insist upon the exercise of diligence on the part of the holder in demanding payment. Such indorsement is regarded as equivalent to drawing a new bill, or making a new note payable at sight or on demand." Wade on Law of Notice, Sec. 738.

The two cases here declared to be decidedly against the current of authority are the same subjected to criticism by the two preceding authors.

"In every case of the dishonor of a promissory

note it is the duty of the holder to give due notice thereof to all the prior parties on the note who are liable to make payment to him, and to whom he means to look for payment. [And this is equally true if the note is payable on demand]." Story on Prom. Notes (6th Ed.), Sec. 299.

Though this distinguished author does not in this quotation specify notes indorsed before maturity, or notes indorsed after maturity, nor define the time in which notice shall be given further than to say it shall be "due notice," it is obvious from the comprehensiveness of his language that he intended to embrace both in the same general rule. Having discussed the subject of the indorsement of time-notes before and after maturity, and of sight and demand-notes, in preceding chapters, it was sufficient, in laying down a rule deemed applicable to all alike, to say: "In *every case* of the dishonor of a promissory note it is the duty of the holder to give *due notice*," etc.

It is elsewhere said: "When a note is indorsed after maturity, it must be demanded of the maker within a reasonable time, and immediate notice given of non-payment." Byles on Bills (7th Ed., by Sharswood), 170, note.

In *Colt* v. *Barnard* the suit was by indorsees against indorser of overdue note. Neither demand nor notice was proved. The head-note of the case is as follows: "Indorser of a note overdue is not liable thereon, unless demand is made upon maker within reasonable time, and immediate notice of

non-payment given to such indorser; so, though
the maker is insolvent and has absconded." Chief
Justice Shaw, in the opinion, says: * * * "It
is very clear that a promissory note is negotiable
after it falls due as well as before. * * * It
is like drawing a bill at sight, on which a drawer
or indorser cannot be holden without presentment
and notice of non-payment. All the reasons which
require a demand and notice in any case to
charge the indorser, apply to this. There is the
same reason for prompt notice—namely, that the
indorser may take measures to secure payment—if
the note is dishonored on presentment. * * *
As between maker and promisee, a note is payable
on demand at any time after it becomes due.
When it is indorsed after due, it is in legal effect
a note on demand, and it is to be understood by
the parties as if written 'on demand.' In that
case the law is well settled the demand must be
made within reasonable time, and, if not paid, im-
mediate notice of non-payment must be given to
the indorser." 29 Am. Dec., 584 (18 Pickering,
260).

In *Jones* v. *Robinson* the indorsee of an over-
due note sued the indorser. The testimony pro-
duced to show notice of non-payment was not ad-
missible. The Court said: "When a note has
been indorsed after maturity, as in the case at
bar, it is in legal effect, as between the indorser
and indorsee, an inland bill of exchange, payable
on demand; while between the indorser and maker

it remains a note in effect, payable on demand. Consequently, to charge the indorser, it must be presented within a reasonable time after the transfer, and, if payment be refused, immediate notice must be given to the indorser, all the incidents of an inland bill, payable on demand, having place, as between these two parties, as to due diligence and lawful excuse for want of it; and this because the indorser's undertaking is predicated upon conditions, and unless these are performed they cannot be made absolute, so as to entitle the holder to an action against him; and, in this respect, there is no difference whether the paper be indorsed before its maturity or afterward, although there is a difference in another respect—that is to say, when a note is indorsed before due that is payable at a day certain it must be demanded on the day it becomes due, without regard to circumstances, to fix the indorser; whereas, that same note, if indorsed after maturity, need not of necessity be presented on any given day, it having become, in legal effect, a note payable on demand. But whether the paper be indorsed before or after maturity, all the reasons which require demand and notice equally apply, and in each case there is the same necessity for prompt notice of non-payment that the indorser may take measures to secure the payment if the note be dishonored on presentment." 11 Arkansas, 504 (54 Am. Dec., 212).

In *Patterson* v. *Todd* the Court said: "The questions for decision in this case have relation to

Rosson *v.* Carroll.

the effect of indorsing a promissory note overdue. * * * Where a note is indorsed before it is due the holder must present it for payment at maturity, and, in case of default, must give immediate notice of the dishonor; but after a note becomes due it is payable whenever the holder chooses to demand it, and for this purpose an action at law is sufficient as between the holder and the maker. Like a contract for the payment of money where no time for payment is specified, it is legally payable presently. So that when a note is indorsed, the indorser still stands in the condition of the drawer of an inland bill of exchange; and we refer to the note, as before, for the purpose of ascertaining the amount, and time and place of payment. The time of payment having passed, the note is, in law, payable on demand; and this shows that the indorsement is to be considered as if made upon a new note, payable on demand, and the legal effect of it is precisely the same as if the indorser had drawn an inland bill of exchange upon the maker, payable at sight. It is the duty of the holder of such a bill to present it for payment within a reasonable time, and, if the bill be dishonored, to give immediate notice thereof to the drawer. In the case of an indorsement of a note overdue the holder is, in like manner, bound to present it for payment within a reasonable time, and, in case of non-payment, to give immediate notice of the dishonor to the indorser, otherwise the latter is discharged from

liability. This doctrine is fully sustained by the authorities." 18 Penn. State, 426 (57 Am. Dec., 622).

In *Graul* v. *Strutzel,* the Court said: "It is contended by counsel for the plaintiff that, as to the note which was overdue when it was indorsed, no demand of payment and notice of non-payment to the indorser was necessary. But such is not the rule. A note indorsed after due must be presented to the makers for payment within a reasonable time, and notice of non-payment must be given to the indorser immediately, which means, at furthest, the next day after default, where the parties reside in the same town." 53 Iowa, 712 (36 Am. R., 250).

In our own case of *Union Bank* v. *Ezell* the suit was against the indorser of an overdue bill of exchange. It was drawn on a citizen of Philadelphia, Penn., and indorsed by the Union Bank at Columbia, Tenn., to the plaintiff, who, presumably, resided at the latter place. The plaintiff caused the bill to be presented for payment twenty-six days after indorsement, which being refused by the drawee, protest was made, and the indorser "duly notified thereof." In the opinion, this Court, speaking through Judge Green, said:

"Two questions are made upon the record by the counsel for the plaintiff in error:

"*First.*—It is insisted that a bill of exchange after due is *functus officio,* and that if indorsed, no action lies on the instrument against such in-

dorser. We understand the settled doctrine to be
clearly otherwise. A bill may be transferred as
well after as before it is due. The difference is,
that if it is transferred after due, as there is no
time fixed for payment, it is, in such case, paya-
ble on demand. The party who indorses a bill
after it is due, and negotiates it, gives to it, as
far as he is concerned, all the character and effi-
cacy of a bill payable on demand.

"*Second.*—It is insisted that His Honor erred in
telling the jury that the bill, being overdue when
the plaintiff got it, it was necessary for him to
show that he had presented it for payment in
a reasonable time; and that what was reasonable
time to make demand of payment was a question
of fact, to be judged of by the jury according to
the circumstances of the case. We think this in-
struction strictly correct." 10 Hum., 386.

Nothing is said with respect to notice in this
case, except that the indorser was "duly notified"
of presentment and non-payment; but the bill in
suit was declared to have "all the character and
efficacy of a bill payable on demand." From
this it follows that it was subject not only to the
same rule as to demand, but also as to notice.

In *Kirkpatrick* v. *McCullough*, 3 Hum., 171, and
*Duffy* v. *O'Conner*, 7 Bax., 500, no rule is laid
down as to the time in which either demand or
notice is required. The adjudication in each case
is simply that the liability of an indorser of an
overdue note is contingent upon demand and notice.

The principal question in the early case of *Stothart & Co.* v. *Lewis*, decided by this Court in 1807, was upon the point of notice. The note in suit was indorsed *after* maturity. No notice of the maker's failure to pay was ever given the indorser, except by commencement of suit against him. In that case the Court said: "When a negotiable paper, under the Act of 1762 or 1786, is indorsed, it should be presented for payment within a reasonable time, and if refused or neglected the indorser ought to have notice immediately of such failure, and that the holder intends to look to the indorser. * * * Where a bill of exchange is indorsed after the time of payment, it is usually taken on the credit of the indorser, but this does not seem to be the case with an indorsement of a promissory note. It is taken, whether before or after the note is due, with a view to the drawer in the first instance, and should in either case be presented for payment and notice given." 1 Overton, 256.

Taking the first and last sentence of this quotation together, it is seen that the Court, in effect, places an indorser *before* maturity and one *after* maturity on the same footing with respect to notice, and says that in either case "the indorser ought to have notice immediately." Such is the clear meaning of the language used, and the doctrine so announced is in substance the same as that laid down in the later decisions and text-books from which we have made quotations on the same subject.

Rosson v. Carroll.

The case of *Stothart & Bell* v. *Parker*, which was decided in the same month, and reported in the same book (1 Overton, 260), and which is now relied on as announcing a contrary doctrine, and thereby sustaining contention here made for complainant, will be noticed hereafter.

There are four adjudicated cases from other States in conflict with the proposition that the same diligence must be used in giving notice of the dishonor of a note indorsed when overdue as is required in case of one indorsed before maturity; three of them holding that more time is allowed in the former than in the latter case, and the other holding that commencement of suit is sufficient notice in the former case.

These cases are: *Van Hoesen* v. *Van Alstyne*, 3 Wendell, 75 (Lawyer's Ed.); *Gray* v. *Bell*, 2 Richardson's Law, 67 (44 Am. Dec., 277); *Chadwick* v. *Jeffers*, 1 Richardson's Law, 397 (44 Am. Dec., 260); *Jordan* v. *Hurst*, 12 Penn. State, 269.

In the first of these the Court said: "The note, having been transferred long after it was due, is to be considered as a note payable on demand, and the demand and notice must be made in a reasonable time. What is a reasonable time depends on the circumstances of the case. From the remark of the defendant below, that Cooley would get into business again and pay, it is evident an immediate demand and notice was not contemplated. The demand was, in fact, made within a few weeks, and the notice given within.

two or three months. I am inclined to think this was sufficient, under the circumstances of the case, to charge the indorser." 3 Wendell, 75.

Though notice given within two or three months after demand is here held to be sufficient to bind the indorser, the holding is predicated upon the peculiar circumstances of the case, among which was the fact that he evidently did not contemplate immediate notice. This is one of the two cases referred to disapprovingly by Daniel, Parsons, and Wade. It is also " commented upon and its correctness denied by Church, C. J., in *Lockwood* v. *Crawford*, 18 Conn., 361," says a note to 1 Parsons on N. & B., 519.

The opinion is in accord with authorities heretofore considered in the announcement that " the note, having been transferred long after it was due, is to be considered as a note payable on demand."

The head-note in *Gray* v. *Bell* is as follows: " Demand and notice by the indorsee of a note past due are necessary to render the indorser liable as a new maker of the note. What is reasonable diligence in making demand of the drawee and giving notice to the indorser of a note past due is a question which should be left to the jury." The indorser of an overdue note is, in this case, held to be in the attitude of an additional maker, and not subject to the rules of an ordinary indorser. In the opinion the Court said: " The paper being past due and, in mercantile

contemplation, dishonored, it was not subject to the same rules that would be applicable to a note indorsed before it was due. The invariable presumption of the law should be that where one indorses a note when past due, he does so on the knowledge that payment has been demanded and refused by the maker. The indorsee takes the note, under such circumstances, as much on the credit of the indorser as upon that of the maker. * * * The doctrine is this: That an indorser of a promissory note, whether to bearer or order, after it is past due is an additional maker with a postponed liability, depending on the diligence of his indorsee, which must always be left as a question of fact to the jury." 44 Am. Dec., 277. This is the other case referred to with disapprobation by the three text-writers just mentioned. Parsons and Daniel speak of it as dispensing with notice altogether.

In *Chadwick* v. *Jeffers* the head-note states the points decided. It is this: "Rules of diligence in demanding payment of negotiable instruments, indorsed before due, do not apply to those indorsed after due. These rules are designed for the security of parties secondarily liable, and when demand or notice is not necessary for their protection it is dispensed with. Commencing suit and notice thereof to indorser is sufficient notice and demand where the note was overdue when transferred, and the suit was begun in a reasonable time and at the request of the indorser." 44 Am. Dec., 260.

Rosson *v.* Carroll.

The last two cases were decided by the Supreme Court of South Carolina in 1845. Though not expressly, they seem impliedly to modify the cases of *Ecfert* v. *Des Condres* (1 Mill, 69) and *Poole* v. *Tollison* (1 McCord, 199), decided by the same Court in 1817 and 1821 respectively. Especially is this so of *Poole* v. *Tollison*, in which the majority of the Court said immediate notice was required as much in case of the indorsement of an over-due note as in that of any other, and the minority expressed the opinion that notice at any time before action brought was sufficient.

The point decided in *Jordan* v. *Hurst* is well stated in the syllabus, as follows: "An indorser of an overdue note is not discharged by want of notice for three months of the subsequent demand and refusal, there being no evidence that he was injured by such want of notice." 12 Penn. State, 269.

This case is much criticised and virtually over-ruled by the same Court in *Patterson* v. *Todd*, 18 Penn. State, 426 (57 Am. Dec., 622), to which we have already referred and from which we have made free quotation.

So, the only one of the four adverse cases that has escaped unfavorable criticism is *Chadwick* . v. *Jeffers*, and it may have met the same fate and the fact be unknown to us. Certainly it cannot stand against so nearly all the other authorities.

*Stothart & Bell* v. *Parker*, 1 Overton, 260, decided by this Court in 1807, is also relied on by

8—6 P

complainant's counsel to sustain their contention with respect to the matter of notice. The report of that case is very brief. The plaintiffs, who were the indorsees of an overdue note, made demand of payment without effect, but failed to give notice of non-payment to the indorser. The Court said: "In relation to promissory notes there is the same necessity for demand of the drawer and notice of non-payment, if assigned, after being due as before. The general rule is that there should be this notice *within a reasonable time.*" 1 Overton, 262.

It is the "general rule" with which we are now dealing; and by that rule, it is said in the last case, "a reasonable time" is allowed in which to give notice. It will be observed, however, that no difference is made between the rule where the note is indorsed *before* due and where it is indorsed *after* due. The reasonable time meant by the Court is alike applicable to both.

Many of the older authorities state, without reference to the time of indorsement, whether before or after maturity, that notice of dishonor must be given "within a reasonable time," and that what constitutes such reasonable time is a question of fact for the jury in each case. But the Courts have now fixed this period so definitely that it has become a question of law by the weight of authority, and cannot so appropriately be now spoken of as merely reasonable time. Byles on Bills, 285, 286, and notes; 1 Parsons on N. & B., 506,

507, and 510, 511; Story on Prom. Notes, Sec. 319; Chitty on Bills (11th Ed.), 323; Tiedeman on Com. Paper, Sec. 337; Randolph on Com. Paper, Secs. 1251 *et seq.*

The modern authorities do not mean, of course, that the time allowed shall be so short as to be *unreasonable*, but simply that the period is now so well fixed as a matter of law that it can be better defined otherwise than by using the rather indefinite phrase of some of the cases. Whatever terms may be used, they generally mean the same thing, in legal contemplation, or nearly so, and refer to indorsements before and after maturity, without distinction as to the time of notice.

"Notice of dishonor," says Randolph in his very learned work, "must be sent in all cases within a reasonable time. The indefiniteness of this phrase has, however, been closely restricted and defined by modern decisions. In sending notice of dishonor, every party through whom it is transmitted is bound to use reasonable diligence in forwarding it; and the rule requiring notice of dishonor to be sent in a reasonable time applies to notice given to an indorser after maturity, no greater diligence being required in his case than in that of an ordinary indorser or drawer." Randolph on Com. Paper, Sec. 1251.

The language employed by the Court in *Stothart & Bell* v. *Parker*, *supra*, does not authorize the distinction counsel would make, or justify the contention that more time for giving notice is

allowable where the indorsement was made *after* the maturity of the note than where it was made *before* maturity.

Then, the irresistible conclusion from the authorities is that the rule with respect to the time within which notice of non-payment must be given to the indorser is the same whether the indorsement be made before or after the maturity of the note.

The next inquiry is as to the time within which the notice must be sent—how soon after dishonor? The authorities seem to be agreed that it must be sent on the next regular business day; but, in case the parties reside in different places, and the notice is to be transmitted by mail, there seems to be some conflict as to whether it must be sent, at all hazards, by the mail of that day, depart when it may, or whether, if the departure be at an unseasonable hour, it will be sufficient to send it by the first mail of the second day; and, again, whether, if there be two mails on the first day after dishonor, it will answer to send the notice by the latter.

Byles says: "If the post does not go out on the next day, notice need not be posted till the day after, or till the next post-day." Byles on Bills, 286.

Chitty .says: "And if there be no post on the next day, or if the post go at an unreasonable hour in the morning, then he must send notice by the very next post. But he is not bound, on

account of there being no post on the day after he receives notice, to forward it on the very day he receives it." Chitty on Bills (11th Ed.), 326.

Kent expresses the opinion that it is sufficient if the notice be mailed at *any time* on the day after dishonor (3 Kent, 106, note); and Story says this is now the established doctrine (Story on Prom. Notes, 411); but Parsons thinks it too liberal to the indorsee, as almost necessarily giving him more than one whole day (1 Parsons on N. & B., 508); and with him Daniel seems to agree (Daniel on Nego. Insts., Sec. 1040).

A later author says: "The rule requiring notice to be given in a reasonable time has been narrowed down so as to require notice to be given, at latest, on the next day after the maturity of the paper." Randolph on Com. Paper, Sec. 1259.

Again: "But the better rule is now generally recognized that notice must be mailed in time to go by the mail of the next day, if there is any, and that *any mail* of that day is sufficient." *Ib.*, 1266.

Daniel states a rule, which he says is sanctioned by numerous and eminent authorities, and may be safely followed in all cases, thus: "In other words, the notice must be sent by the *first mail* which leaves after the day of dishonor is passed, and does not close before early and convenient business hours of the day succeeding the day of dishonor, the design of the law being to afford the holder an opportunity to mail the notice on the day suc-

Rosson *v.* Carroll.

ceeding that of dishonor." Daniel on Nego. Insts. (3d Ed.), Sec. 1089.

By another learned jurist the rule is stated as follows: "The older authorities state that the notice must be given within a reasonable time after the dishonor. But the present rule of the law-merchant is that the holder has until the expiration of the next day after dishonor in which to give notice, subject to certain modifications necessary in the cases where the notices have to be sent away from the place of protest. Where the party entitled to notice resides in the place of protest, the notice may be sent to him at his residence at any time during the day following the dishonor of the paper before the hours of rest. But if he is to leave the notice at the party's place of business, it must be left during business hours. Where the notice is to be sent to one resident elsewhere, the holder has until the *last mail* of the day after dishonor is made up, provided the mail on that day does not leave at an unreasonable hour. If it leaves at an unreasonable hour, the holder has until the next mail to send out his notices." Tiedeman on Com. Paper, Sec. 337.

The rule deduced by Parsons from what he calls "the most recent authorities," and that which he approves, is "that the holder is bound to forward the notice as early as by *a mail* of the day after dishonor which does not start at an unreasonably early hour; and if there is no mail which

leaves on that day after a reasonably early hour, the notice is to be forwarded by the next mail which starts thereafter." 1 Parsons on N. & B., 511.

On the next day after the indorsement complainant placed the note in charge of the Southern Express Company, at Union City, for collection from the maker at Paragould, with special instruction to "protest if not paid." This instruction was written on the shipping envelope of the company, in which the note was sent to Paragould and returned. On this envelope, when returned, after the printed words, "when presented," and in the space allowed for answer, were written the following figures: "4—4, 4—12," indicating clearly that the note had been twice presented for payment, once on the fourth and again on the twelfth of April. The president of the Paragould Stave Manufacturing Company, which was the maker of the note, testifies that the agent of the express company twice demanded payment of him, but when this was he does not state. The fair inference is that the figures indorsed on the envelope indicate the dates at which such demands were made.

On the twelfth of April John M. Davis, as Notary Public, wrote on the note, "Protested for nonpayment," and made full and formal certificate of protest, reciting, among other things, presentment of the note by himself to the maker for payment, and the refusal to pay. In addition to the pro-

duction of this certificate, complainant read as evidence on the trial the deposition of the Notary, in which he deposed positively that he made the demand as in the certificate recited. This is plenary proof of the formal presentment and protest of the note by the Notary, though the president, of whom the demand is said to have been made, does not recollect that any one except the agent of the express company ever presented the note to him for payment.

The certificate alone would have been sufficient to establish the facts therein stated, in the absence of contrary proof, being *prima facie* evidence of the facts which the Notary, in virtue of his office, was authorized to certify. *Golladay* v. *Bank*, 2 Head, 58; *Sulzbacher* v. *Bank*, 2 Pickle, 201; Code, §§ 1800, 1801; Randolph on Com. Paper, Secs. 1310, 1312; *Gardner* v. *Bank*, 1 Swan, 419; *Caruthers* v. *Harbert*, 5 Cold., 362; *Colms* v. *Bank*, 4 Bax., 422; *Spence* v. *Crockett*, 5 Bax., 576.

The Notary's certificate also recites that he had on the same day "given due notice to the parties concerned, in writing, * * * in the manner following:

"'To Paragould Stave Manufacturing Company,
"'Ware, Bittick & Co.,
"'M. Rosson.

By handing to agent of Southern Express Co.'"

Though the recital is that he gave notice to Ware, Bittick & Co. as a firm only, and that he did that "by handing" it to the express agent, the Notary states in his deposition that he *thinks*

he sent notice to the defendant *individually* at Kenton, Tenn.

Since much stress is laid on his evidence, the statements of the Notary on this point will be noticed more at length. His answer to the general question whether he gave notice of non-payment and protest, when, and to whom, is: "I did. On April 12, 1887, I sent notices to Paragould Stave Manufacturing Company, Ware, Bittick & Co., and M. Rosson," failing to mention the name of defendant or to say that he sent him notice. When asked pointedly if he sent notice to the defendant, J. R. Carroll, at Kenton, Tenn., he replied: "Think I did, but cannot say positively." Being further interrogated by complainant's counsel, he said: "My best recollection is that I asked Mr. John Rosson Mr. John R. Carroll's address for the purpose of giving him notice of protest of note, and suppose he had notice." The next question and answer are as follows: "How did you give him notice? Through the United States mail?" Answer: "Do not remember; suppose in same manner, of course, as the others."

On cross-examination this witness said this was the first note he ever protested; that he could not say "positively" how many notices he handed the express company, and did not remember to what point the notice to Ware, Bittick & Co. was addressed.

John Rosson corroborates the Notary to the extent of saying that the latter asked him for the

address of defendant, and that the desired information was given.

Notice *was sent* by mail to the *complainant* on the twelfth day of April. This is demonstrated by the post-mark on the envelope containing the notice; but whether mailed by the Notary, or by the express agent after receiving it from the Notary, does not appear. The supposition that it was done by the agent would be consistent with the certificate of protest. However, if assumed to have been done by the Notary himself, that would be only a circumstance indicating, at most, that he made duplicate notices for each party to be notified, handing one set to the express agent and mailing the other himself. It would not establish the insistence that notice was, in fact, mailed to the defendant, either in his own name or in that of the indorsing firm of which he was a member.

If the express agent mailed one of the notices handed to him by the Notary to the complainant, it would be reasonable to suppose that he mailed the others likewise to the parties for whom intended. But this would be one supposition based on another, which, of course, cannot be a substitute for proof of · the fact. What the express agent did with *any* of the notices stated in the certificate of protest to have been placed in his hands, is not disclosed in the record; his testimony was not taken. The defendant denies that he received any notice for himself or his firm.

The evidence alluded to, which is substantially

all that is to be found in the record on the subject of notice *by mail*, is not sufficient to show that any notice of dishonor was ever *mailed* to the defendant in his individual name, or for Ware, Bittick & Co., either by the Notary or any other person.

At best, it but discloses an impression on the mind of the Notary that he mailed notice to defendant, and raises a mere inference that the express agent likewise gave him notice by the same method. Impressions and inferences are not enough; to meet the requirement of the law, evidence of an affirmative and positive character must be produced. *Whitaker* v. *Morrison*, 1 Fla., 25 (44 Am. Dec., 627); Byles on Bills, 289; Randolph on Com. Paper, Sec. 1312.

A Notary's *belief*, based on entry in his notarial book and his habit, "is good evidence," though he have no independent recollection of the transaction. *Bank* v. *Cowan*, 7 Hum., 70.

So entries on such book opposite the protest, reciting, "Indorser duly notified in writing," and "Indorser duly notified verbally," have been held sufficient proof of notice when coupled with proof of Notary's habit of business. *Bell* v. *Perkins*, Peck, 262; *McNeill* v. *Elam*, Peck, 268.

It has also been decided by this Court that the Notary's certificate, reciting that he gave notice, in connection with his statement as a witness that he was "satisfied in *his* own mind that he had given the notice as stated *in his* certificate on the

protest," is sufficient proof of the fact, though he, at the time of the trial, had no recollection of having given the notice. *Worley* v. *Waldron*, 3 Sneed, 549.

But those cases are not in point here; for in this case there is no confirmatory entry on the notarial book, no recital in certificate of protest that the Notary gave defendant notice, and no proof that to have done so would be in accord with his business habit. On the contrary, he shows that he made no entry; that he had no business habit at that time, it being his first official act, and the certificate of protest produced is in direct conflict with his impression; for it recites that he gave notice to the parties concerned "by handing" same to agent of the express company.

But complainant's case is not rested alone on the assumption that notice was duly sent to defendant from Paragould, the place of demand and protest. On the contrary, he claims that he was himself entitled to the rights of an indorser with respect to notice, having placed the note in the hands of the express company for collection, though without indorsement; and that in the exercise of a legal right he gave the defendant in person proper notice in due time after receiving his own notice, whereby the defendant's liability became fixed the same as if notice had been sent him direct from the home of the maker and place of demand.

It is a well-established rule of law that where

there are two or more indorsements of negotiable
paper, the holder *may* give notice of dishonor to
all the indorsers, and also that each successive in-
dorser, reckoned inversely, likewise has the right
to notify his immediate indorser and those before
him; and that, to do this, he is entitled to the
same time after receipt of his own notice as was
allowed the holder originally. Furthermore, that
one who holds a note as collecting agent is al-
lowed the same time for receiving and transmit-
ting notice as a beneficial holder, and his princi-
pal is entitled to notice as an indorser. Randolph
on Com. Paper, Secs. 1261, 1262; Daniel on Nego.
Insts., Secs. 992, 993, 995, 995a, and 1044; Story
on Prom. Notes, Sec. 326; Byles on Bills, 292,
notes; *Butler* v. *Duval*, 4 Yer., 265; *McNeil* v.
*Wyatt*, 3 Hum., 126; *Hill* v. *Bank*, *Ib.*, 670; *Simp-
son* v. *Turney*, 5 Hum., 419.

In our own cases, *supra*, and in several other
cases cited by the text-writers for the proposition
that the principal is entitled to notice as an in-
dorser, and to time after its reception to notify
those antecedent to him on the paper, the bene-
ficial owners had nominally indorsed the paper to
the collecting agent; but we do not understand
that the rule depends on the indorsement as a
prerequisite. Certainly there is the same reason
for the rule in each case. The agent has no
beneficial interest in the paper in either instance.
His relation and his duty to his principal is the
same, whether he receives the paper by nominal

indorsement or by delivery merely. His obligation is to his principal only, and that obligation, *as a matter of law*, does not in any case require him to give notice to any one except his principal, though it may be otherwise by special contract. *United States Bank* v. *Goddard*, 5 Mason, 366 (3 Myer's Fed. Dec., Secs. 1016, 1017).

In New York it was decided that an attorney to whom a note was sent for collection, without indorsement, was entitled to one day in which to notify his client of the dishonor, and that the client was allowed still another day to send notice to his indorser. *Farmers' Bank of Bridgeport* v. *Vail*, 21 N. Y., 485.

"And it has been held," says Randolph, "that where the holder employs an attorney to ascertain the residence of an indorser, the attorney, after learning the fact, may take a day to inform his principal of it, and after receiving such information he may have until the next day to give notice." Randolph on Com. Paper, concluding sentence of Sec. 1262, citing *Frith* v. *Thrush*, 8 B. & C., 387 (15 E. C. L. R.).

Under the head of "Banks and other Agents for Collection" Daniel cites the same case for the same proposition, and concludes the section by giving the reason for the general rule as follows: "The factor, or other agent or attorney, may not know which of the prior parties his principal may desire to hold bound to him; or he may not know where notice would find them, as he has no in-

Rosson *v.* Carroll.

terest in the bill or note, or privity with the parties, and the rule placing such agents on the footing of a distinct holder is essential to the convenient collection and management of negotiable paper." Daniel on Nego. Insts., Sec. 992.

Another distinguished writer bases the rule on the same reasoning (Story on Prom. Notes, Sec. 326), which, as we have already said, applies with the same force and propriety to a note or bill passed to the agent by delivery merely as to one indorsed to him for collection.

So, on the authorities cited and on the reason of the rule, we are of the opinion that the question of indorsement or no indorsement to the collecting agent is entirely immaterial in the decision of this case; and, therefore, that complainant, though he placed the note in the hands of the express company by delivery merely, and without indorsement, was, nevertheless, entitled to one day after receiving information of its dishonor in which to give the defendant notice thereof, provided complainant's agent exercised due diligence in making demand and informing him of non-payment. If there was any negligence in those matters on the part of the agent, that negligence is to be imputed to the principal, as in any other case, and, if sufficient in degree, will defeat his action.

We are aware of the statement in at least one case that the owner of a paper placed in the hands of a collecting agent by mere delivery should not be allowed any of the advantages of

an indorser because he has none of an indorser's obligations; but the same process of reasoning is applicable to the beneficial holder who has *indorsed* his paper for collection, for his obligations to the collecting agent are not those of an indorser. He can, in no event, be forced to pay the debt to his collecting agent; yet the rule is well established that he is entitled to notice of dishonor from his agent, and to time thereafter to notify those antecedent to himself on the bill or note. In each case, and alike in both, the object is to facilitate due presentment without requiring the beneficial holder to go in person and demand payment of the maker when they reside at different places.

The stamp of the postmaster at Union City on back of envelope containing notice to complainant shows that it reached his office April 14. Complainant testified that he received his notice "about April 14 or 15;" again, "about April 15, 1887;' that at the same time and place, and by mail, he received another notice just like his own, though in a different envelope and without any instruction or explanation as to use to be made of it, so far as recollected; that "a day or two after" receiving his notice, "about April 16 or 17," he went to Kenton on a delayed train, and, "after night," handed the other notice to the defendant, and told him of the return of the note protested, and that he "needed the money on it, and looked to him for it."

Now, assuming that complainant notified defendant exactly as he said he did (though defendant denies it altogether), the notification is not shown to have been in time—that is, on the next day—or that any holiday intervened. As to both the day on which he received the notice and that on which he handed it to defendant, he speaks by approximation only, and not with that definiteness and certitude which is required in proving notice of the dishonor of a negotiable instrument. Whether he received the notice on the fourteenth or on the fifteenth of the month, and whether he delivered it on the sixteenth or on the seventeenth, he did not—and, presumably, could not—state with certainty. The notice must have been received on the fifteenth, the latter of the dates named for reception, and delivered on the sixteenth, the former of the dates named for delivery, to be in time to bind the indorser. Complainant's recollection with regard to the transaction seems not to have justified him in fixing these two dates definitely; hence, he used the indefinite word "about," and linked with each of these dates another one. His statement that he went to Kenton to notify defendant immediately after receiving his own notice did not cure this defect in his testimony; for those words, when considered in connection with the other language used, as must be done, cannot fairly be held to mean *the next day*. He did not say that it was the next day, as he no doubt would naturally have done, or been required to do by

9—6 P

his able counsel, if he knew such to be the fact.
The Court cannot bring certainty, and that, too,
in his favor, out of his own uncertainty.

Says Lord Ellenborough, in *Lawson* v. *Sherwood*,
1 Stark., 314 (2 E. C. L. R.): "The witness says
two or three days; but the third day would be
too late.  It lies upon you to show that notice
was given in due time, and I cannot go upon
probable evidence without positive proof of the
fact."

This language is quoted in Byles on Bills, 289,
as a correct statement of the English rule.

Citing the same case and American authority in
addition, another writer says: "The plaintiff must
distinctly show that notice was given on the proper
day; it will not suffice to show that it was given
on one of two days, because the latter would be
too late."    Daniel on Nego. Insts., Sec. 1051.

Already it has been seen that the fact of formal
demand and protest on April 12 is amply proven;
whether it is shown to have occurred within a
reasonable time is yet to be considered.   In send-
ing the note for collection the next day after ac-
quiring it, with special instruction to "protest if
not paid," the complainant exercised even greater
diligence than the law required of him; and the
demand of payment, which seems to have been
made by the express agent on April 4, was cer-
tainly within a reasonable time after the indorse-
ment.    Had the note been *then* protested, there
would have been no room for denying that de-

mand and protest were soon enough. But, in fact, the note was not protested, or attempted to be protested, until April 12, the day on which the express agent seems to have made his second demand, and on which the Notary shows he made demand.

In view of the fact that there had been a demand on the fourth without protest, we are of the opinion that the subsequent demand and protest were not good in law. The demand on the fourth could not be made effectual by protest on the twelfth; and demand having been made on the former date, it was then out of the power of the indorsee to bind the indorser by a second demand on the latter date. Protest on the one day cannot be coupled with demand on the other day; nor can a demand, ineffectual against the indorser because not followed by due protest, be abandoned, and another one, without such defect, substituted for it after the lapse of eight days, so as to charge the indorser.

That the demands by the express agent may not have been made at the maker's office is unimportant in this litigation, since the maker made no objection on that account. Nor does it help complainant's case that he specially instructed the express company to protest the note if not paid, and had a right to believe that it would be done promptly and legally; for, as between complainant and defendant, the failure of the express company to have proper demand made is chargeable to com-

plainant; it was his agent, and its negligence must be regarded as his negligence in this action.

Again, passing the questions of demand and notice altogether and irrespective of them, it is insisted, in behalf of complainant, that he is entitled to a recovery on two other grounds:

*First.*—That the maker of the note was insolvent, and known by the defendant to be so at the time of the indorsement, and that he, therefore, is liable without demand and notice.

*Second.*—That defendant admitted his liability for the debt, and took steps to have it paid after the refusal of the maker to pay, thereby superseding the necessity of demand and notice, and rendering himself liable without respect to either.

Neither of these grounds of relief was alleged in the bill; but, pending the argument of the case before the Chancellor, complainant asked leave to amend so as to include them. Motion to amend was overruled.

This action of the Court is assigned as error; and, besides, it is urged that, without the proposed amendment, the facts mentioned should be considered under the original bill, and relief granted accordingly.

Pretermitting the questions of pleading and also that as to whether insolvency of the maker of a promissory note known to the indorser at the time of indorsement will excuse demand and notice (it was decided in *Stothart & Bell* v. *Parker*, 1 Overton, 262, that it would), it is sufficient to

Rosson *v.* Carroll.

say that the fact of insolvency is not established. The Paragould Stave Manufacturing Company is shown to have made an assignment for the benefit of creditors on the tenth day of May, 1887, and its assets, administered thereunder, proved insufficient for the payment of its debts. The proof does not show, however, that it was insolvent on the first day of April, when the note was indorsed. The impression we get from the rather indefinite testimony on this point is that the business of the company was not at that time in a prosperous condition, but that its assets were, to all appearances, ample to meet its liabilities if applied for that purpose.

The doctrine is well established that if an indorser, with full knowledge that he has been discharged from liability by the failure of his indorsee to make proper demand and give due notice of non-payment, promise to pay the note or acknowledge his liability therefor, he thereby binds himself, and may be proceeded against as if his liability had been legally fixed in the first instance. To have this effect, the promise or acknowledgment must be distinctly made. If it be not unequivocal, or be not with full knowledge of his discharge, it will not avail the indorsee any thing. *Bogart* v. *McClung,* 11 Heis., 105; *Spurlock* v. *Union Bank,* 4 Hum., 336; *Golladay* v. *Bank,* 2 Head, 58; *Martin* 'v. *Ewing,* 2 Hum., 359; *Williams* v. *Bank,* 9 Heis., 441; *Union Bank* v. *Rawlings,* 1 Leg. R., 226; *Seay* v. *Furgerson,*

1 Tenn. Ch., 293, 294; *Gregory* v. *Allen*, M. & Y., 76.

It is not claimed that defendant ever *promised* complainant, or any one for him, that he would pay the note; hence, he must succeed, if he succeeds at all on this branch of the case, on the ground of an acknowledgment or admission of liability.

Ware, who, as well as defendant, was a member of the firm of Ware, Bittick & Co., states that defendant told him at Paragould, between the fifteenth and twentieth of April, 1887, that the note had been protested, and complainant had been to see him about the money; that he (defendant), in same conversation, asked witness why the note had not been paid, and said "it would have to be paid." The next two questions and answers are explanatory of defendant's declaration that the note " would have to be paid," and disclose the only admission or evidence of admission .supposed to have been made to this witness. They are:

" 19. Who did he say would have to pay the note ?

"*Ans.*—We, I think.

" 20. Who did he mean by *we?*

"*Ans.*—I could not say whether he meant the firm of Ware, Bittick & Co. or the Paragould Stave Manufacturing Company."

John Rosson says he had a conversation with defendant, at Paragould, after the tenth day of May; that defendant told him the note had been

left out of the assignment, and said "that they would have it to pay." By "they" he understood defendant to mean Ware, Bittick & Co.

On April 22, 1887, defendant wrote complainant that he had just been to Paragould, "but failed to accomplish any thing·as yet;" that if a trade pending there "is accomplished, your debt is to be paid off;" and concluded with the statement that he would write again as soon as he should "hear from the parties."

On the twenty-seventh of May following he wrote the complainant in these words:

"We were at Paragould last week, and found the business in such condition that we attached all the company's property for what it owed us and you. We [meaning himself and a confidential friend and adviser] put your claim in with ours, and got the business in a shape that it will be closed out as soon as it can be done, and the property all sold. This is the best we could do, as we could see no way to get any cash out of it for you now.      *      *      *

"(Signed)                    J. R. CARROLL."

While these facts show that the defendant thought his firm, which had indorsed the note to complainant, was probably liable to him for its payment, and that he was taking such steps as he deemed best to obtain collection from the maker, they do not establish an admission of liability on his part. They fail to show that explicit acknowledgment of accountability which is necessary to revive the

Rosson *v.* Carroll.

previous obligation and preclude an indorser from relying on the laches of his indorsee as a discharge. Moreover, there is no proof that what he said and did was said and done with full knowledge that he had previously been discharged.

The other assignments of error need not be mentioned further than to say that they relate to rulings of the Chancellor on evidence, and that we have considered all the evidence that was competent and none that was incompetent.

Let the decree be affirmed.