NEES v. HAGAN.—118 S. W. (2d) 567.

Eastern Section. April 16, 1938.

Petition for Certiorari denied by Supreme Court, July 2, 1938.

Walker Casey and J. D. B. De Bow, both of Nashville, for plaintiff in error.

John M. Cate and John C. Sandidge, both of Nashville, for defendant in error.

PORTRUM, J. In this suit the plaintiff sought a recovery upon two promissory notes aggregating the sum of $2043.88, bearing date of September 11, 1926, and payable one year after date, executed by A. W. Galloway, and payable to the order of the codefendant, W. F. Nees, who in turn endorsed the note to the plaintiff Ben T. Hagan. The above named maker and the payee of the note entered into a collateral agreement, evidenced by writing, which explains the original transaction and confers an additional right upon the maker in reference to the note. This contract reads as follows:

"I hereby agree to sell all the interest I have in the Moore and Young Lumber Company, equally 37½% of the capital invested and profits, to A. W. Galloway for the sum of $6500, $3000 to be in cash and the balance as follows:

"$900 note signed by firm for money I loaned them, same to be charged to A. W. Galloway when paid, and the balance $2600 in notes of A. W. Galloway with lien retained in said $2600 note until paid. It is agreed that a reasonable time will be allowed for payment of the notes, provided they are handled so as to not inconvenience or cost me any money for renewal."

When these notes matured on the 11th day of September, 1927, the payee Nees requested payment of the maker Galloway, but Galloway wishing to take advantage of the provision of the above quoted contract in reference to an extension of time in payment and Nees was agreeable provided a renewal could be effected. Galloway called upon one Mr. Tarver, a broker who had money of the plaintiff's to invest for him, and Galloway requested Mr. Tarver to purchase the two notes for the plaintiff. Before making the purchase the defendant Nees saw Mr. Tarver and he requested him to purchase the

notes. The purpose of this negotiation was to permit Mr. Galloway, the maker to take advantage of the provision in the contract which allowed him a reasonable time for payment. Mr. Tarver consented to the purchase of the notes for the plaintiff, and the payee Nees made the following endorsements on the back of the notes:

"For value received in cash ($1000 on one of the notes, and $1043.88 on the other), I hereby transfer the within notes with contract of agreement attached, with all my interest in law and equity to Ben T. Hagan, this October 31, 1927.
"[Signed.] W. F. Nees."

Immediately following this endorsement, the endorsee entered the following notation:

"The payment of this note is hereby extended to October 31, 1928. This October 31, 1927. Cr.—Within note with interest paid to October 31, 1928."

This last entry effectuated the purpose of the transaction and was contemplated by all the parties, namely, the maker, the endorser, and the endorsee, and is a consent for the extension of time for the payment of the note and a compliance with the provision of the supplemental contract attached to the note, and his renewal in no way prejudiced the right of the endorser Nees.

The note did not contain the provision waiving presentment, demand, notice of nonpayment, and protest, nor grant the right to extend the time of payment other than as shown by the supplemental contract attached and above quoted. But just how many extensions are justified under this supplemental contract, without notice and further consent by the endorser, is one of the issues to be determined. For this reason we will make reference to the further extension.

The next two entries upon the note read as follows:

"The payment of this note is extended to October 31, 1929.— Balance. $1000. This October 31, 1928. Cr.—Within note with interest paid to October 31, 1929.—By note."

(2) "Cr. Within note with interest paid to October 31, 1930.— By note."

This was the last extension of time of payment by a renewal entry, and no formal demand was made upon the maker for payment, and notice of dishonor given the endorser. Almost three years later, or on April 26, 1933, the suit was instituted against the maker and the endorser.

The defenses relied upon by the endorser Nees are that there was no demand made upon the maker within a reasonable time and notice of dishonor given the endorser as provided by law. That the holder agreed to extend the time of payment and to postpone the holder's right to enforce the instrument without the consent of the endorser and without an express reservation. And the further defense that the holder was guilty of laches in extending the time and

failing to sue within the reasonbale time after the last maturity date, without the knowledge or consent of the endorser, and while the maker of the note was solvent and able to pay, he having since become insolvent and unable to pay.

The plaintiff joined issue upon these special pleas asserting that since the original note was endorsed after maturity it became a demand note, and by reason of the endorsement after maturity the endorser became a guarantor and was not entitled to demand, notice, or protest. And if mistaken in this then,—''By the express terms of the Uniform Negotiable Instrument Act, an endorsement of the note after maturity makes it a demand note as to the person so endorsing it, and suit is the only demand required to hold the person so endorsing it.''

These issues were submitted to a jury and a verdict rendered in favor of the plaintiff, approved by the trial judge, and after overruling the motion for a new trial an appeal in error was prosecuted by the endorser Nees to this court.

The payee, Mr. Nees, endorsed this note a few days after its maturity for the purpose of negotiating it to the defendant in error, making an unqualified endorsement thereon so far as his liability was concerned. His status and liability is defined by Section 63 of the Uniform Negotiable Instrument Act as codified in the Code, Section 3787, as follows:

''A person placing his name upon an instrument otherwise than as a maker, drawer or acceptor, is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity.''

There is nothing within or upon the instrument indicating that the endorser intended to be bound in any other capacity; and the oral evidence above recounted established nothing other than the parties attempted and intended to negotiate the instrument by endorsement, passing title from the payee to the endorsee with the further intention that the endorsee might extend the time for payment as provided for in the supplemental contract. From these facts no purpose to be bound in any other capacity than as endorser can be inferred. It inevitably follows that Nees assumed the relationship of an endorser of the instrument by his endorsement, and in no sense can he be classified as a guarantor. The cases defining the status, rights, and liability of a guarantor, and relied upon, are not in point. The principal case relied upon which reviews the authorities and is said to be controlling in this case is that of Roskind v. Elterman, 1 Tenn. App. 272. The facts were that a mother endorsed two notes given by her son for insurance premiums after the notes had been delivered to the payee and it was held that the mother was a guarantor and not an endorser, and she could not take advantage of the absence of notice, dishonor,

and protest. In the case, as in others, where an endorser has been held to be a guarantor, the endorser was an accommodation endorser and his contract was collateral to the negotiation of the instrument.

▇▇ The fact that the notes in the instant case were negotiated after their maturity, made them demand notes by the express provision of the Code, and there is no warrant for holding that an endorser of a demand note is in fact a guarantor. It makes no difference for what reason the note became a demand note, and if the note is negotiated after maturity, the negotiation has the same legal effect as if the note were made payable at sight and negotiated immediately. The Negotiable Instruments Act draws no distinction between the liability of an endorser of a demand note and an endorser of a time note endorsed before maturity. His liability is the same in each instance. The court holds that the legal status was not that of a guarantor, but that of an endorser.

The liability of an endorser of a past due obligation, namely, a demand instrument is best stated by copying the provisions of the law in reference thereto.

"7331. (7) When payable on demand.—An instrument is payable on demand:

"(1) Where it is expressed to be payable on demand, or at sight, or on presentation; or

"(2) In which no time for payment is expressed.

"Where an instrument is issued, accepted, or indorsed when overdue, it is, as regards the person so issuing, accepting, or indorsing it, payable on demand."

"7395. (71) Presentment where instrument is not payable on demand and where payable on demand.—Where the instrument is not payable on demand, presentment must be made on the day it falls due. Where it is payable on demand, presentment must be made within a reasonable time after its issue, except that in the case of a bill of exchange, presentment for payment will be sufficient if made within a reasonable time after the last negotiation thereof."

"7408. (84) Liability of persons secondarily liable, when instrument dishonored.—Subject to the provisions of this law, when the instrument is dishonored by non-payment, an immediate right of recourse to all parties secondarily liable thereon accrues to the holder."

"7413. (89) To whom notice of dishonor must be given.—Except as hereinafter otherwise provided, when a negotiable instrument has been dishonored by non-acceptance or non-payment, notice of dishonor must be given to the drawer and to each indorser, and any drawer or indorser to whom such notice is not given is discharged."

"7426. (102) Time within which notice must be given.—Notice may be given as soon as the instrument is dishonored; and unless delay is excused as hereinafter provided, must be given within the times fixed by this law."

The time as fixed by the law is not important in this case for the reason that it is not insisted that any notice was ever given the endorser other than the filing of suit against him. The provisions of the law referred to dispensing with notice to the endorser is not applicable for there was no waiver of notice contained in the instrument, or orally agreed to.

 Under the above quoted provisions of the Act as codified, the endorser was entitled to notice of nonpayment, and that demand for payment be made within a reasonable time after the maturity of the instrument, that is assuming that the note continued to be a demand note after its negotiation by endorsement, and was not reinstated as a time note by the extension of time for and to a definite date in the future. If it were as a matter of law reinstated as a time note by the extension to a definite future date then demand would have to be made as provided by statute at its maturity. But if it continued to be a demand note so far as the endorser was concerned, the holder would have a reasonable time to make demand after the extension date of maturity. So in either event, the longest date would be a reasonable time after the last maturity date, conceding for the argument that the holder had the right to make more than one extension of time for payment. The last extension was granted in the fall of 1929, extending the note to the fall of 1930. Suit was not instituted until 1933, or a period of three years, and under the circumstances this hardly could be a reasonable time. But if it were a reasonable time, no demand was made unless the filing of the suit was a demand, and no notice of dishonor was given unless the summons to the endorser was sufficient notice and was served upon the endorser within the statutory period after service upon the maker. In the case of Rosson v. Carroll, 90 Tenn. 90, 16 S. W. 66, 12 L. R. A. 727, it is held an endorser of overdue negotiable paper is not liable upon an endorsement, unless a demand for payment is made upon the maker by the endorsee within a reasonable time, and immediate notice of nonpayment given to the endorser that the paper is dishonored. In the opinion of this court the Negotiable Instruments Act re-enacted the same rule.

But counsel insists upon a different conclusion, stating that the Negotiable Instruments Law, Code 1932, section 7325 et seq., does not conform to the doctrine of the case, and that the rule is that the only presentment and demand for an overdue note necessary is the institution of the suit, and the endorser being made a co-defendant, notice of demand for payment to the maker is dispensed with as to the endorser. It is said that there are rulings to the

contrary, but this is the great weight of authority, and the court is asked to disregard the holding in the case of Rosson v. Carroll, supra, and to follow the weight of authority. The court thinks counsel is mistaken in the application of the law to the facts of this case. The law he cites and relies upon is where the holder of the note without giving notice to the maker attempts to collect the note either by suit or the application of the maker's funds to the payment of the note, and the maker who is primarily liable resists payment, notwithstanding the note was a demand note, upon the ground that he was entitled to presentment and demand for payment in order to mature the obligation against him, so the institution of suit upon the note was premature or the application of his funds was unwarranted without the demand. The holding is that where a maker of a demand note is insisting upon presentment and demand for payment to mature it, that the notice of the institution of the suit against him is sufficient, for the reason that presentment or demand is necessary ''only in cases where the rights and liabilities of indorsers and of holders in due course are concerned.'' And such is the holding in the case cited and relied upon of Shuman v. Citizens' State Bank, 27 N. D. 599, 147 N. W. 388, 389, L. R. A. 1915A, 728.

This court agrees that the Negotiable Instruments Law does not change the rule as announced in the cited case, and require presentment and demand for payment to mature the obligation as between the maker and the holder, but it expressly requires presentment and demand and also notice of dishonor to the endorser to mature his secondary liability into a primary liability and make him answerable for the debt. And not only is this required, but it must be alleged in the pleading that presentment and demand was made, the note dishonored, and due notice given to the endorser, or a statutory excuse for the dispensement with the notice, otherwise the plea is demurrable. Numerous annotations are to be found to the Negotiable Instruments Act in the Uniform Act publication to which reference is made for cumulating authorities in support of the holding here made.

The court holds that an endorser's liability is secondary and matures only upon making demand in a reasonable time, in case of demand paper, and notice of dishonor within the statutory period, which acts are prerequisite to the fixing of primary liability upon the endorser. That presentment was not made at any time by the holder to the maker, and therefore no notice of dishonor was possible and no legal liability exists betwen the endorser and the holder. This being true there was no evidence to support the verdict of the jury, and the motion for a new trial should have been sustained.

This holding is conclusive of the issue and it is unnecessary to go further and examine the insistence that the holder extended the time of payment and postponed his right to enforce the instrument without the assent of the endorser or without expressly reserving the right of recourse against him.

Had the defendant in the lower court made a motion for a directed verdict at the conclusion of the evidence this court could have sustained the motion, if he had assigned it as a ground in the motion for a new trial, and dismissed this suit, but he failed to make this motion, making in lieu thereof the motion that there is no evidence to support the verdict, which ground the court has indicated should have been sustained by the trial court. The practice is where the defendant fails to make a motion for a directed verdict but makes a motion that there is no evidence to support the verdict in the motion for a new trial, then that the case must be remanded for a new trial. Such will be the course followed here. The judgment of the lower court is therefore reversed and the case remanded to the lower court for a new trial, and the defendant in error will pay the cost of the appeal.

Ailor and McAmis, JJ., concur.